IN THE MATTER OF APPOINTMENT TO THE HUDSON COUNTY BOARD OF ELECTIONS.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1987—Decided October 21, 1987.

Before Judges PRESSLER, BILDER and MUIR, Jr.

*Harold Krieger* argued the cause for appellants (*Krieger, Ferrara, Flynn & Catalina,* attorneys; *Frank E. Catalina* on the brief).

*William Harla,* Assistant Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *William Harla* on the brief).

The opinion of the court was delivered by

MUIR, JR., J.A.D.

Appellants, the Vice–Chairlady of the Hudson County Democratic Committee, the Hudson County Democratic State Committeeman and the Hudson County State Committeewoman, challenge Governor Thomas H. Kean's nomination and commission of Robert Jackson as a Democratic member of the Hudson County Election Board. They argue the Governor's appointment is invalid and assert their nominee, Katie Harris, should

be commissioned. The appeal requires our determination of the meaning of *N.J.S.A.* 19:6–18 in relation to *N.J.S.A.* 19:6–20.

*N.J.S.A.* 19:6–18 prescribes the method of appointment of County Election Board members. In pertinent sections, the statute provides:

> During the 30–day period immediately preceding February 15 in each year, the chairman and vice-chairlady of each county committee and the State committeeman and State committeewoman of each of such two political parties, respectively shall meet and jointly, in writing, nominate one person residing in the county of such county committee chairman, duly qualified, for member of the county board in and for such county.

> . . . . . . . .

> If nomination be so made, the said county committee chairman shall certify the nomination so made to the State chairman and to the Governor, and the Governor shall commission such appointees, who shall be members of opposite parties, on or before March 1. If nomination be not so made on account of a tie vote in the said meeting of the county committee chairman, county committee vice-chairlady, State committeeman and State committee-woman, in respect to such nomination, the said county committee chairman shall certify the fact of such a tie vote to the State chairman, who shall have the deciding vote and who shall certify, in writing, to the Governor, the nomination made by his deciding vote. . . .

*N.J.S.A.* 19:6–20, the statute under which the Governor commissioned Jackson, reads:

> If any nomination is not made and certified in writing to the Governor within the time specified, the Governor shall make such appointments of his own selection from the citizens of the county in which such failure occurs.

The events leading to Jackson's commission are uncontroverted. On February 26, 1987, the Hudson County Democratic County Committee Chairman and Vice–Chairlady and the Hudson County Democratic State Committeeman and State Committeewoman (hereafter statutory committee) met to nominate their candidate to the Hudson County Election Board. The County Committee Chairman nominated Frank Caleca, whose term on the board expired March 1. The nomination failed by a three to one vote. The nomination of Katie Harris then succeeded by the same vote. Harris qualified as a registered Democrat and Hudson County resident.

On February 27, 1987, the State Democratic Committee Chairman, Raymond Durkin, received certification of the statutory committee's nomination of Harris to the election board. Durkin's secretary, Evelyn Williams, had the certification delivered to Michael Gluck, appointment counsel to the Governor, on March 2, 1987. The precise time of day the Secretary of State received the certification is not clear. The Governor's brief states it was "very near the close of the business day...."

The Governor, on March 26, 1987, nominated and commissioned Robert Jackson. Jackson is qualified as a registered Democrat and Hudson County resident.

Appellants contend *N.J.S.A.* 19:6–20 only applies when the statutory committee does not certify its nomination to the Governor on or before March 1 or, in this case March 2, because March 1 fell on a Sunday.[1] They contend that to be the "spirit and intent of the law." They reason the law must be liberally construed in their favor to make February 15 a directory rather than mandatory deadline, citing *In re Atlantic County Bd. of Elections*, 117 *N.J.Super.* 244 (App.Div.1971) for support.

The Governor argues the Legislature designed a nominating process which gave him the authority to make the election board nomination if the statutory committee failed to nominate and certify its candidate by February 15. He contends the only limitation on his authority to act, if the statutory committee does not meet the February 15 deadline, is when there is a tie vote by the statutory committee. In the latter event, he asserts, *N.J.S.A.* 19:6–18 allows time for the State Chairman to break the tie and certify the candidate by March 1.

■ The issue presented is whether the Legislature intended *N.J.S.A.* 19:6–20 be triggered by the failure of the statutory

---

[1] *N.J.S.A.* 19:11–1 provides where any date for filing a document falls on a Sunday or legal holiday, filing on the next business day constitutes compliance with any Title 19 filing deadline.

committee to nominate and certify in writing to the Governor the name of its candidate by February 15.

The guidelines for resolving the issue begin with the premise that the meaning of any statute must, initially, be determined from its language. If the statutory words, given their ordinary and common significance, are plain or are clear and unambiguous, we cannot employ rules of construction or interpretation. *Watt v. Mayor and Council of Borough of Franklin,* 21 *N.J.* 274, 277 (1956); *Ford Motor Co. v. N.J. Dept. of Labor and Industry,* 5 *N.J.* 494, 503 (1950).

Applying these guidelines, we find that *N.J.S.A.* 19:6–18 is clear and unambiguous in its requirement that the statutory committee must meet and designate its nominee in writing during the 30–day period preceding February 15. The statute says the Committee "shall" meet and nominate in writing. The ordinary common meaning of shall is imperative and mandatory. *Harvey v. Essex County Board of Freeholders,* 30 *N.J.* 381, 391 (1959). In fact, there is a presumption that it is imperative and not directory, which can only be overcome by something in the character of the legislation in the context which will justify a different meaning. *Union Terminal Cold Storage Co. v. Spence,* 17 *N.J.* 162, 166 (1954). We find nothing here to warrant overturning the presumption.

In so finding, we distinguish the holding of *In re Atlantic County Bd. of Elections, supra,* relied upon by appellants, for a directory rather than imperative meaning for the word "shall." There, we dealt with the issue of disenfranchisement of a designated member of the statutory committee where he cast an absentee ballot and did not "meet" with other members of the committee. Confronted with the strong public policy favoring enfranchisement of the voter under Title 19, we found a directory rather than mandatory significance to the "... shall meet ..." provision of *N.J.S.A.* 19:6–18. Thus, the context of the circumstances dictated overturning the presumption. No similar context exists here.

■ What is not clear, however, is the date by which the statutory committee is required to submit its certification to the Governor. The statute, after requiring the meeting and nomination, in writing, then requires that the county committee chairman "shall certify the nomination so made to the State chairman and to the Governor, and the Governor shall commission such appointees ... on or before March 1." The act does not state on what date the certification must be made. We consequently are confronted with determining the legislative intent. The resolution of that intent comes from the legislative history of the statute. *Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182 (1980).

Prior to 1968, *N.J.S.A.* 19:6–18 required the statutory committee to meet the 30 days immediately preceding March 1. The committee included the State chairman who had the authority to break any tie vote of the committee.

In 1968, Senate Bill 590 proposed an amendment to *N.J.S.A.* 19:6–18 that removed the State chairman from the statutory committee, gave him a vote only in the event of a tie and required the County chairman to certify the statutory committee's nominee to both the State chairman and the Governor. The Senate Bill initially required the statutory committee to meet the 30 days immediately preceding March 1. A subsequent amendment changed March 1 to February 15 and the bill became law as it now reads.

The obvious purpose of the change from March 1 to February 15 is to give the State chairman time to send his certification to the Governor in the event of a tie vote. Prior to the amendment, the State chairman cast his vote in the event of a tie at the statutory committee meeting and could certify his vote immediately. However, his removal from the statutory committee created the need for a time gap, in the event of a tie, between the committee's certification and the State chairman's certification. The two-week period between February 15 and March 1 is solely for the benefit of the State chairman in the

event of a tie. It is not designed to allow the statutory committee to meet, nominate or certify its nominee any time after February 15.

We therefore conclude the statutory committee, under *N.J. S.A.* 19:6–18, must meet, nominate in writing and, in the absence of a tie vote, certify to the State Chairman and to the Governor its nominee for a County Election Board on or before February 15. In the event the committee fails to do so, the Governor, under *N.J.S.A.* 19:6–20 may nominate and commission his choice for Board member. Since the Democratic statutory committee from Hudson County failed to act within the statutory time limits, the Governor properly nominated Robert Jackson.

The Governor's nomination is affirmed.