285 N.J. Super. 328 (1995)
666 A.2d 1368
ELEANOR MERCURIO, TOM AND DIANE ALLEN, PAUL AND CATHY NOVITCH, AND RALPH J. SALERNO, PLAINTIFFS-APPELLANTS,
v.
RICHARD DelVECCHIO, JR., AND BOARD OF ADJUSTMENT OF THE TOWNSHIP OF BLOOMFIELD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1995.
Decided November 14, 1995.
*330 Before Judges PETRELLA, SKILLMAN[1] and EICHEN.
Robert Ricci, Jr. argued the cause for appellants (Salerno, Cozzarelli, Mautone, DeSalvo & Nussbaum, attorneys; Ralph J. Salerno of counsel; Mr. Ricci, on the brief).
Angelo Cifelli, Jr. argued the cause for respondent Richard DelVecchio, Jr. (Piro, Zinna, Cifelli & Paris, attorneys; Mr. Cifelli, on the brief).
Vincent A. Pirone, attorney for respondent Bloomfield Township Board of Adjustment, relies on the brief submitted by co-respondent DelVecchio.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Eleanor Mercurio, Tom and Diane Allen, Paul and Cathy Novitch, and Ralph J. Salerno, appeal from a judgment entered by the Law Division, upholding the grant of a variance to defendant Richard DelVecchio, Jr. by the Board of Adjustment of *331 the Township of Bloomfield (Board) and dismissing their complaint in lieu of prerogative writ.
DelVecchio applied on November 20, 1992 for the expansion of his nursing home pursuant to N.J.S.A. 40:55D-70(d)(2). Plaintiffs were objectors to DelVecchio's application for a variance to expand a nonconforming use in a residential zone. Originally, DelVecchio wanted to add a second-story addition to the rear of the building that had been converted to a nursing home in 1949 and a twelve-foot by twenty-four-foot addition to the garage. He also sought site plan approval. Public hearings were held on December 10, 1992, and February 11, March 11, and April 8, 1993. On April 8, the Board, by a vote of 6-1, adopted a resolution granting the variance to permit only the addition of rooms for two patients, subject to certain restrictions, but denied the application for an addition to the garage.
On appeal, plaintiffs argue that the Board improperly allowed a newly appointed member, who had not participated in the first of three Board meetings, to participate and vote in the Board's action in granting the variance. They assert that such improper participation tainted the decision. They also argue that the Board's refusal to adjourn the third of four hearings because one of the objectors was ill was reversible error. Finally, they maintain that the granting of the variance was arbitrary, capricious, and unreasonable.
We address initially the issues involving participation by the newly appointed member and the refusal to adjourn the third hearing date due to the illness of an objector.

I.
For the variance involved in this case to be granted, at least five out of the seven members of the Board had to vote in favor of the variance. N.J.S.A. 40:55D-70(d)(2). The Board approved the variance by a vote of six-to-one, the challenged member being one of the six.
*332 Following the first hearing on December 10, 1992, but before the second hearing of February 11, 1993, Steven Sefcik was appointed to the Board. Although he had not attended the first hearing, Sefcik attended all subsequent hearings. Sefcik indicated on the record and certified in writing that he had listened to the tapes of the December 10 meeting.[2] Over the objection of Mercurio's attorney, Sefcik was allowed to participate in the hearing.
N.J.S.A. 40:55D-10.2 provides:
A member of a municipal agency[[3]] who was absent for one or more of the meetings at which a hearing was held shall be eligible to vote on the matter upon which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he was absent, and certifies in writing to the board that he has read such transcript or listened to such recording.
Although the statute does not address any distinction between current members and newly-appointed members, two Law Division decisions have considered the matter and arrived at contrary conclusions. Compare Patel v. Planning Bd., 258 N.J. Super. 437, 609 A.2d 1319 (Law Div. 1992) (new member is not considered a "member" under section 10.2 and, therefore, is not allowed to participate) with Lawrence M. Krain Assocs. v. Maple Shade Tp., 185 N.J. Super. 336, 448 A.2d 522 (Law Div. 1982) (newly appointed member is allowed to participate under section 10.2).
We do not agree with the reasoning of Patel that section 10.2 of the statute only contemplates or applies to an individual who was a member of the board when a hearing occurred and, hence, solely to an existing member who merely was "absent" from a particular *333 hearing. To the extent that Patel is inconsistent with our determination we overrule it.
New members (or even re-appointed members) may well be named to a board of adjustment at the beginning of any year or to fill a vacancy under the staggered scheme of appointing members contemplated by the statute. See N.J.S.A. 40:55D-69. Therefore, following Patel could well hamper the processing of applications, particularly where the application proceedings carry over from one year to the next.[4]
Moreover, in our view, the more recent Supreme Court decision in Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 233-234, 645 A.2d 89 (1994), lends some support to the conclusion that a "new member" should be entitled to participate in hearings and vote on an application, provided the new member complies with the statute. In Pizzo Mantin, there was a remand for reconsideration after the Court reversed the board. The Court noted that the board already had reached a final decision when the new member joined the board. The Pizzo Mantin Court found Patel "not entirely applicable" in part because on remand "the board must make new findings of fact and reach additional and different conclusions of law in applying the provisions of the subdivision and zoning ordinance." Id. at 234, 645 A.2d 89. Hence, the Court explained, the review and reassessment that was necessary entailed "a fresh determination that can be undertaken by all the members of the board, both those who participated in the earlier hearings as well as those who have since joined the board." Ibid.
In the instant case, the new member joined the Board before the proceedings were concluded and was able to review the tape of the first hearing and participate fully in the three subsequent hearings. The new member also took part in the deliberations, *334 the adoption of findings, and the decision. An existing member who missed the first or second meeting, as the chairman did here, would have no more a "feel" for the application than the new member who missed only the first meeting. Accordingly, we affirm the Law Division judge's action allowing Sefcik's participation.
In light of our determination that Sefcik properly participated in the vote, we need not consider plaintiff's further contention that his participation tainted the proceedings.

II.
We next consider plaintiffs' argument that the Board's failure to grant an adjournment due to objector Salerno's claimed illness was arbitrary, capricious, and unreasonable and requires a new hearing. We reject this argument.
There is no question that an objector should have an opportunity to be heard and to cross-examine other witnesses. See N.J.S.A. 40:55D-4 and -10d. In the present case, Salerno, an objector and an attorney, had attended the first two hearings and extensively cross-examined the applicant and the applicant's expert. Other objectors also were present and participated. On the day of the third hearing, March 11, 1993, Salerno had a letter delivered to the Board asking to have the hearing scheduled for that evening adjourned because he was ill.
The record does not reflect the nature or extent of Salerno's illness; however, Salerno had a previous opportunity to participate as an objector. As an attorney, he knew or should have known that he also could have communicated his objections to the Board in his letter indicating that he was unable to attend. Furthermore, Salerno had the option to have another attorney, perhaps from his own office, appear on his behalf when he found himself unable to attend the third hearing. Just because a person is an objector does not confer an absolute right to have an applicant's matter adjourned due to claimed inability to attend one *335 of several scheduled hearings. Generally, it is the applicant and the Board that control the scheduling of the application. However, we do not approve the Board Chairman's statement that adjournments, as a matter of policy, are never given to objectors. See Woodland Civic Ass'n v. Brick Homes, Inc., 144 N.J. Super. 78, 364 A.2d 574 (Law Div. 1976) (Board was "arbitrary in not responding" to objector's continuance request made three days before first scheduled hearing because statutory ten-day notice was insufficient to marshall opposition to variance under specific and complicated circumstances of that case). The facts in the case before us are far different from those in Woodland. The objectors here not only had sufficient time to prepare opposition, but they were heard and their arguments were considered. Mercurio's attorney[5] presented opposition to the variance application, and that opposition presumably was similar in many respects to that of Salerno.[6] Even if the Board's failure to adjourn here was erroneous, and we do not so hold, in light of the fair and thorough hearing conducted, this would not provide a basis for overturning the variance granted.
We note parenthetically that a 120-day time limitation begins to run on the filing of a completed application. See N.J.S.A. 40:55D-76(c). The effect of the Board's failure to act within that time period, absent the consent to an extension by the applicants, could result in the application automatically being approved. In the case before this court, DelVecchio's application was filed on November 20, 1992, and by the date of the March 11, 1995 request for an adjournment, the 120-day period had almost run. Thus, without first obtaining the applicant's consent, the Board might *336 have had difficulty meeting the 120-day statutory requirement had it entertained Salerno's request to adjourn. No request for the applicant's consent appears in the record. However, we do not view this denial of an adjournment or continuance here for one objector to have been arbitrary, particularly where there were other objectors.
The record does not indicate that the applicant had been responsible for taking up considerable time so as to prevent objectors from being heard. Moreover, as discussed hereinafter, the variance application was meritorious and the record does not provide a basis to conclude that denial of the late request by an objector for an adjournment prejudiced that objector.
We reject Salerno's claim that the Board erred in refusing to adjourn the hearing because of his inability to participate one evening. Furthermore, no proffer appears in the record of this appeal of any facts that, if presented to the Board or the Law Division, would have changed the result.

III.
We now address the plaintiffs' claim that the Board's action in approving the variance was arbitrary, capricious, and unreasonable. It is clear from the record that the expansion approved by the Board was minimal and that under our standard of review there was sufficient credible evidence in the record to support the Board's determination. Evesham Tp. Bd. of Adjustment v. Evesham Tp., 86 N.J. 295, 302, 430 A.2d 922 (1981); Kramer v. Sea Girt Bd. of Adjustment, 45 N.J. 268, 296, 297, 212 A.2d 153 (1965); Sugarman v. Township of Teaneck, 272 N.J. Super. 162, 172, 639 A.2d 402 (App.Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994). Indeed, there appears no real dispute that the existing nursing home is an inherently beneficial use. Sica v. Board of Adjustment of Tp. of Wall, 127 N.J. 152, 159-162, 603 A.2d 30 (1992); see, e.g., Jayber, Inc. v. Township of West Orange, 238 N.J. Super. 165, 174-175, 569 A.2d 304 (App.Div.) (senior citizen congregate-care facility determined to be inherently beneficial *337 use), certif. denied, 122 N.J. 142, 584 A.2d 214 (1990); Urban Farms, Inc. v. Borough of Franklin Lakes, 179 N.J. Super. 203, 212, 431 A.2d 163 (App.Div.) (120-bed nursing home found to be inherently beneficial use), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981). The application, to the extent it was granted by the Board, clearly warranted approval in view of the beneficial purpose of the use and the fact that the increase in lot coverage created by the two new patient units actually was below the allowable maximum.
We are satisfied under our standard of review that the record supports the Board's grant of the variance and that its decision was not arbitrary, capricious, or unreasonable. In summary, the Board's action clearly was not arbitrary, capricious, or unreasonable and was supported by the record. Giving due regard to the expertise and discretion accorded to the zoning board, there is no warrant to disturb the trial judge's decision upholding the grant of the variance and rejecting plaintiffs' procedural arguments.
Affirmed.
NOTES
[1] Judge Skillman did not take part in oral argument. However, the parties consented to his participation in this decision.
[2] Parenthetically, we note that the chairman missed the second hearing, but he also indicated on the record and certified that he had listened to the tape of that meeting.
[3] "Municipal agency," as used in this statute, refers to the "planning board or board of adjustment, or a governing body of a municipality when acting pursuant to this act...." N.J.S.A. 40:55D-5.
[4] We need not address a similar issue which might arise months after a board's decision where there is a court challenge to a decision that eventually results in an order of remand to the board for new or additional findings and conclusions.
[5] Mercurio's brother is an attorney and represented his sister throughout the hearings.
[6] Salerno had proper notice of the application and the hearings and had an opportunity to cross-examine some of the applicant's witnesses. He asserts, however, that he was denied an opportunity to present an affirmative case. Salerno obviously had a right to object to the variance. However, the record does not indicate any witnesses or information that Salerno wanted to present.